UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APC, INC., | ) |
|     Plaintiff, | ) ) ) No. 3:10-0444 |
| v. | ) JUDGE ECHOLS ) |
| SOLVEIG HUSETH, | ) ) |
|     Defendant. | ) |

## MEMORANDUM

Defendant Solveig Huseth ("Huseth") filed a Motion To Dismiss For Lack Of Personal Jurisdiction And Failure To Join A Party Under Rule 19 (Docket Entry No. 4), to which Plaintiff APC, Inc. ("APC") filed a response in opposition (Docket Entry No. 7), and Huseth filed a reply (Docket Entry No. 12).

## I. FACTS

APC filed this lawsuit in the Chancery Court of Davidson County, Tennessee, and Huseth removed the case to this Court on the basis of diversity jurisdiction. APC alleged in the Complaint that it is a Tennessee corporation with a principal place of business located at 2021 21st Avenue S., Suite 420, Nashville, Tennessee,[1] and Huseth is an individual who can be found for the purpose of service of process at an address in Chanhassen, Minnesota. (Docket Entry No. 1-2, Complaint ¶¶ 1-2.)

The Complaint further alleged that APC and Huseth are parties to an agreement dated February 1, 2009, whereby APC granted Huseth the rights to produce a version of APC's musical

---

[1]The Court notes this is the same address listed for Plaintiff's attorney.

1

production "Always. . . Patsy Cline" at the Chanhassen Dinner Theatre in Chanhassen, Minnesota. (Id. ¶ 3.)

The Complaint alleged that, pursuant to the agreement, Huseth was required to pay APC fifteen percent (15%) of the weekly box office receipts from Huseth's production of the musical, but Huseth did not do so on certain dates and in certain amounts listed in the Complaint, for a total of $34,352.00 in lost royalties to APC. (Id. ¶¶ 4-5.) In addition, pursuant to the agreement, Huseth failed to make each payment within ten (10) days of its due date, increasing the royalty rate by ten percent (10%). APC alleged the actual amount due to it for unpaid weekly box office receipts is $57,253.33. (Id. ¶ 6.)

The Complaint also alleged that Huseth was more than ten days late in paying APC its percentage of box office receipts for twenty (20) weeks listed in the Complaint. Thus, pursuant to the agreement, Huseth is indebted to APC for an additional sum of $35,554.22 representing the additional fee of ten percent (10%) for the weeks in which Huseth paid late. (Id. ¶¶ 7-8.) The Complaint further alleged that Huseth did not pay an administrative fee of $1,120.00, and Huseth issued 2,682 unauthorized complimentary tickets, which, calculated at the regular ticket price, results in an additional $8,046.00 in fees due to APC. (Id. ¶¶ 9-10.) In the prayer for relief, APC requested payment of $101,973.55, an award of attorney's fees and costs, and other relief that may be just and proper.

A copy of the license agreement was appended to the Complaint as Exhibit A. The license agreement stated: "THIS AGREEMENT is made and entered into as of February 11, 2009 by and between Solveig Huseth and Chanhassen Dinner Theatres located at 501 W. 78th Street, Chanhassen, MN 55317 ('Producer') and APC, Inc. PO Box 295109, Kerrville TX 78029-5109 ('Licensor')."

(Docket Entry No. 1-2 at 4.) APC, as Licensor, granted the Producer, under the conditions stated in the agreement, the right and license to produce and present the play in Chanhassen, Minnesota. All checks were to be made payable to APC, in care of Melanie Clark, at a post office box address in Kerrville, Texas. Two clauses referenced the state of Tennessee. The governing law clause provided that "[t]his Agreement shall be deemed to have been made in Tennessee and shall be governed by Tennessee law applicable to agreements duly executed and to be performed wholly within the state of Tennessee." (Id. at 9.) The agreement also contained an arbitration clause which provided that any dispute arising in connection with the contract "shall be determined and settled by arbitration by one arbitrator in Tennessee[.]" (Id. at 8.) Huseth signed the agreement as "Producer." The copy attached to the Complaint does not include a signature for the "Licensor," APC. (Id. at 9.)

In support of her motion to dismiss for lack of personal jurisdiction, Huseth provided her own declaration. (Docket Entry No. 6-1, Theis[2] Decl.) At all times relevant Huseth has been a resident of Shakopee, Minnesota, and employed by The Chanhassen Theatre, LLC in Chanhassen, Minnesota. (Id. ¶ 2.) She was employed as a manager of International Theatres Corporation d/b/a Chanhassen Dinner Theatres from 1992 to March 15, 2010. She is not and was not a shareholder or an owner of International Theatres Corporation d/b/a Chanhassen Dinner Theatres. She was paid a salary of $65,000 per year. She did not receive additional compensation related to the success of the theater or any performances, nor did she receive any portion of the box office receipts. Some

---

[2]Huseth's married name is Theis, but in employment she continues to use her maiden name, Huseth.

years, all managers, including Huseth, would receive a Christmas bonus of between $400 and $800. (Id. ¶ 6.)

Huseth does not own real estate or hold any other interest in property or bank accounts in Tennessee. She has not incurred or paid taxes in Tennessee. She has not traveled to Tennessee for any reason. She does not own, operate, conduct, engage in, carry on, or transact business of any kind in Tennessee. She does not and has not solicited or advertised for business in Tennessee. (Id. ¶¶ 3-5.)

Huseth signed the license agreement on behalf of Chanhassen Dinner Theatres in Chanhassen. APC drafted the agreement. Huseth did not realize at the time the agreement was signed that she had inadvertently been named as a party to the agreement. In September 2009 Huseth notified APC's licensing agent that the license agreement should be between Chanhassen Dinner Theatres and APC. The licensing agent replied that Huseth should provide a letter from Chanhassen Dinner Theatres to that effect, which Huseth did. (Id. ¶ 7.)

The email correspondence between Huseth and Joan Kovats, APC's licensing agent, is attached to Huseth's declaration.[3] In her email Huseth stated: "Thomas K. Scallen is our Producer and Owner. The agreement should be between Thomas Scallen and Chanhassen Dinner Theatres with APC." (Docket Entry No. 6-1 at 7.) Kovats responded:

> In regards to this email and your phone call, please have Thomas Scallen write a letter on the stationary of his theatre requesting the change on the contract and send it to our Business Manager, who does the contracts:

---

[3]The Court notes there is no indication in the emails where Kovats' office was geographically located. Kovats' telephone number, shown on the production program of the Chanhassen Dinner Theatres (Docket Entry No. 6-1 at 6) includes a 203 area code. The Court takes judicial notice that area code 203 is assigned to Connecticut.

4

MELANIE CLARK
C/O APC, INC.
POST OFFICE BOX 295109
KERRVILLE, TX 78029-5109

She will attach his letter as an adde[n]dum to the contract, and you should do the same.

(Id.)

Huseth also attached to her declaration a copy of the September 17, 2009 letter to Melanie Clark in Kerrville, Texas, on Chanhassen Dinner Theatres letterhead signed by Thomas K. Scallen as President & Producer, confirming that Paragraph 1 of Page 1 of the agreement should read: "THIS AGREEMENT is made and entered into as of February 11, 2009 by and between International Theatres Corp. DBA Chanhassen Dinner Theatres located at 501 W. 78th Street, Chanhassen, MN 55317 ("Producer") and . . .[.]" The letter also provided that the signature block on page 7 of the agreement should show Thomas K. Scallen signing as President and Producer. Although Scallen requested that Clark show acceptance of the amendments by faxing Scallen a copy of the letter signed by Clark, there is no indication in this record that Clark signed the Scallen letter. (Id. at 8.)

Huseth received a letter in January 2010 from APC's attorney in Nashville, Tennessee, demanding that she pay certain amounts allegedly owed to APC. (Id. ¶ 7 & Exhibit B at 1.) Huseth immediately called the attorney, emailed him the earlier correspondence Huseth exchanged with APC's licensing agent, and gave him contact information for International Theatres' owner, Thomas Scallen. (Id. ¶ 7 & Exhibit B at 3.)

Until she reviewed the Complaint filed by APC, Huseth had no knowledge that APC was a Tennessee corporation or that it maintained a place of business in Tennessee. (Huseth Decl. ¶ 9.)

All of Huseth's communications with APC, including email, mail, fax, and telephone, were directed to and from Kerrville, Texas, and Chanhassen, Minnesota. Huseth had no contact with anyone from APC in Tennessee throughout the term of the license agreement. Huseth understands that all payments made by International Theatres under the license agreement were directed to APC in Kerrville, Texas. To Huseth's knowledge, no one from International Theatres, including her, traveled to Tennessee regarding the license agreement or the musical production. (Id. ¶ 8.)

APC did not provide any affidavits or declarations. Thus, APC has not controverted any of the facts as stated in Huseth's declaration.

## II. ANALYSIS

In considering the motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court has three options: "(1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." Music City Coach, Inc. v. Star City Coach Works, LTD., 2010 WL 1408272 at *6 (M.D. Tenn. Apr. 2, 2010). The Court has the discretion to decide, based on the circumstances of the case, which route to take. Id. APC, however, as the party asserting jurisdiction, has the burden of proof. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); Inter-City Prod. Corp. v. Willey, 149 F.R.D. 563, 570 (M.D. Tenn. 1993); Chenault v. Walker, 36 S.W.3d 45, 56 & n.3 (Tenn. 2001). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." Music City Coach, Inc., 2010 WL 1408272 at *6. If the Court proceeds to rule on the motion based on the affidavits submitted, the burden on the plaintiff is relatively slight, as the plaintiff must make only a *prima*

*facie* showing of jurisdiction. See id. The Court must consider the facts in the light most favorable to the plaintiff. See id.

Whether the Court may exercise personal jurisdiction over Huseth depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 361 (6th Cir. 2008). Because Tennessee's long-arm statute consistently has been construed to extend to the limits of federal due process, the two inquiries are merged, and the Court need only determine whether the exercise of personal jurisdiction over Huseth under the circumstances presented comports with federal due process. Bridgeport Music, Inc. v. Still N The Water Publishing, 327 F.3d 472, 477 (6th Cir. 2003).

To satisfy due process requirements, Huseth must have had certain minimum contacts with the forum such that maintenance of this suit does not offend "'traditional notions of fair play and substantial justice.'" Youn v. Track, Inc., 324 F.3d 409, 417-418 (6th Cir. 2003) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Courts recognize two types of personal jurisdiction: general and specific. "A court may exercise general personal jurisdiction over a defendant when the defendant maintains 'continuous and systematic' contacts within the forum state . . . such that 'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" Lindsey v. Trinity Communication, Inc., 275 S.W.3d 411, 417 (Tenn. 2009) (quoting International Shoe Co., 326 U.S. at 317); Youn, 324 F.3d at 418. APC has produced no evidence that Huseth had such continuous and systematic contacts with the state of Tennessee that this Court may exercise general personal jurisdiction over her.

"In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant 'when a commercial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities.'" Lindsey, 275 S.W.3d at 417-418 (quoted case omitted). To establish specific personal jurisdiction, the defendant's connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This standard ensures that a defendant will not be haled into a jurisdiction solely as the result of "random," "fortuitous," or "attenuated" contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-476 (1985).

The Sixth Circuit established a three-part test to assist the Court in determining whether specific personal jurisdiction of a defendant exists: (1) the defendant must purposefully avail herself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Air Prods. and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007) (citing Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)). "It is often repeated that the first prong–purposeful availment–is the 'sine qua non for in personam jurisdiction.'" Id. (quoting Mohasco Indus., Inc., 401 F.2d at 381-382).

The Court easily concludes on the facts presented that APC has not made a prima facie showing that Huseth purposefully availed herself of the privilege of acting in Tennessee or causing a consequence in Tennessee. Even taking the facts in APC's favor, Huseth has not visited this state,

she does not own any property here, and she has not conducted any type of business here. She lives and works in Minnesota. She signed a license agreement with APC in Minnesota to produce "Always. . . Patsy Cline" at the Chanhassen Dinner Theatres in Minnesota. The license agreement did not reveal that APC is a Tennessee corporation; instead, the license agreement provided a Kerrville, Texas address for APC. Thus, APC's contention that Huseth consented to the jurisdiction of the state of Tennessee by signing the license agreement with a Tennessee corporation is without proof. Furthermore, the mere existence of the license agreement is insufficient to confer personal jurisdiction over Huseth. Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000). APC presented no evidence that Huseth engaged in contract negotiations with APC representatives in Tennessee, that Huseth contemplated her acts would cause future consequences in Tennessee, or that the parties' actual course of dealing in reaching the terms of the license agreement was meant to impact Tennessee such that Huseth purposefully established minimum contacts with Tennessee. See id. (discussing Burger King, 471 U.S. at 479); Tharo Sys., Inc. v. CAB Produktechnik GMBH & Co. KG, 196 Fed. Appx. 366, 370 (6th Cir. 2006).

The Tennessee choice of law provision in the license agreement is not determinative, because a choice of law provision, standing alone, is not sufficient to establish jurisdiction. Burger King Corp., 471 U.S. at 482; Calphalon Corp., 228 F.3d at 722. There are not sufficient contacts of Huseth with Tennessee, in addition to the choice of law provision, to confer personal jurisdiction over Huseth. Similarly, the arbitration clause is not sufficient to establish jurisdiction in Tennessee. See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 262 (3rd Cir. 2000) (rejecting argument that arbitration clause conferred jurisdiction). The license agreement did not contain a venue selection clause. APC, moreover, has produced no evidence that the parties freely

9

negotiated the choice of law clause or the arbitration clause or that Huseth engaged in other contacts with Tennessee such that she reasonably anticipated she could be haled into court in Tennessee as a result of signing the license agreement in Minnesota. See Rice v. Karsch, 154 Fed. Appx. 454, 461 (6th Cir. 2005); Jowers v. Beck, 2010 WL 455280 at *5 (W.D. Tenn. Feb. 2, 2010).

Huseth engaged in various communications by telephone, email, mail and fax with APC representatives, but she believed APC representatives were located in Kerrville, Texas, and APC has produced no evidence to show Huseth's belief lacked foundation. The only direct contacts Huseth had with Tennessee were the telephone call and email she sent to APC's attorney in Nashville upon receiving a demand letter in January 2010. These contacts with APC's attorney in Tennessee are not sufficient minimum contacts to establish that Huseth purposefully availed herself of the Tennessee forum. See Callahan v. Harvest Bd. Int'l., Inc., 138 F.Supp.2d 147, 162 (D.Mass. 2001) (sending a response letter to an attorney's demand letter cannot constitute solicitation of business in forum state and thus, no personal jurisdiction exists); cf. Calphalon Corp., 228 F.3d at 723 (demand letter sent by attorney into Tennessee was insufficient to establish personal jurisdiction over attorney who sent it). Rather, Huseth's contacts with APC's attorney were purely "forfuitous" and "attenuated" based on counsel's location in Tennessee. Id.

APC failed to carry its burden of proof on the other two Mohasco factors as well. This cause of action does not arise from Huseth's activities in Tennessee, and Huseth's acts or the consequences caused by her acts do not have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction over Huseth reasonable. APC has not convinced the Court that it may exercise personal jurisdiction over Huseth. Her motion to dismiss on this ground will be granted.

10

There is no need for the Court to consider whether dismissal is appropriate for APC's failure to join International Theatres Corporation d/b/a Chanhassen Dinner Theatres as an indispensable party.

### III. CONCLUSION

Because Plaintiff APC, Inc. has not established general or specific personal jurisdiction over Defendant Solveig Huseth, Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And Failure To Join A Party Under Rule 19 (Docket Entry No. 4) will be granted in part and denied as moot in part. The Court will grant the motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The remainder of Huseth's motion is moot.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE